IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| AILEAF ASHFORD,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT HAWKINBERRY, LT. PARKER, CAPTAIN WORKMAN, LT. LOWTHER, SGT. RICHTER, SGT. PLETCHER, SGT. FRIEND, ASHLEY COTTON, C.O. DONGILLI, C.O. PELLIS, C.O. EGROS, C.O. DISALVA, C.O. GARLAND, C.O. HALEY, C.O. NEWMAN, SGT BRIAN TANNER, BRIAN COLEMAN, SUPERINTENDENT; ERIC B. PORTER, ADMINISTRATOR OF THE ESTATE OF BRADEN MCKNIGHT; AND CAPTAIN FORTE,<br><br>Defendants, | 2:14-CV-01718-CRE |

## MEMORANDUM OPINION[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

### I. INTRODUCTION

Presently pending before the Court for disposition is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 65]. The motion is fully briefed and ripe for disposition. For the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part.

### II. BACKGROUND

For purposes of this decision, all of the factual allegations of the events giving rise to this

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

1

complaint are considered true and all inferences will be drawn in Plaintiff's favor. Plaintiff, Aileaf Ashford, proceeding *pro se*, is a prisoner currently in the custody of the Pennsylvania Department of Corrections ("DOC") in the State Correctional Institution at Forest ("SCI Forest"). The events giving rise to this lawsuit occurred while Plaintiff was housed at SCI-Fayette in 2014. Generally, Plaintiff alleges that certain members of the corrections staff and supervisors subjected him to unsafe and unsanitary living conditions and retaliated against him for filing grievances about said conditions. Plaintiff initiated this action against numerous corrections officers and officials alleging that the defendants violated his constitutional rights under the First and Eighth Amendments, denied him access to the courts, and were negligent in their duties.

### 1. *Plaintiff's Slip and Fall*

Plaintiff is confined to the Restricted Housing Unit ("RHU") and is confined to his cell for twenty-three hours per day. On January 30, 2014 he was escorted to the yard by RHU staff at 7:30 a.m. Plaintiff claims that the outside temperature was excessively low, and he asked to be escorted back to his cell. His request was denied, and he remained in the yard. To keep warm, Plaintiff paced in circles while trying to avoid a pile of snow and patches of ice in the yard. Nevertheless, Plaintiff slipped and fell on a patch of ice and injured his knee and back. The next day, on January 31, 2014, he was seen by the medical department and diagnosed with a muscle strain and given Motrin 400 mg three times a day for five days. Plaintiff was again seen by the medical department on or about February 10, 2014 and an x-ray was taken of Plaintiff's knee and showed degenerative changes due to modest osteoarthritis. He was prescribed Naprosyn and Elavil. Plaintiff submitted a grievance on February 18, 2014. While Plaintiff does not explicitly describe the subject matter of the grievance, it is assumed that he complained that he was

subjected to excessive cold by being forced to the yard and also complained about slipping and falling on un-cleared ice in the yard. Plaintiff alleges that a correctional officer opened the box and read Plaintiff's grievance. The next morning, on February 19, 2014, Plaintiff was informed by Defendant Sgt. Richter that he would not be allowed to go outside. That same day, Lt. Hawkinberry informed Plaintiff that he would not be allowed to go outside because he submitted a grievance about the unsafe conditions of the yard. Plaintiff was "denied yard" or not permitted to go outside until March 11, 2014 because of the grievance he submitted about the conditions.

*2. Plaintiff's Plumbing Issues in his Cell*

On May 1, 2014, Plaintiff's toilet stopped working in his cell and was unable to flush. Plaintiff was unaware that it was broken until after he defecated that night. Plaintiff told the attending corrections officer on duty that his toilet had stopped flushing and that there was excrement in it. The corrections officer told Plaintiff that he would submit a work order and that Plaintiff should write a request to Lt. Hawkinberry. Plaintiff wrote a request slip to Lt. Hawkinberry the next day, on May 2, 2014, stating the issue. Plaintiff also informed the attending corrections officer ("C.O.") Costello, that his toilet was not working and that excrement was in the toilet. C.O. Costello told Plaintiff that he would report it. Later that day, Plaintiff also informed C.O. Skrobac about the plumbing issues and C.O. Skrobac informed Plaintiff that he would report the issue. Plaintiff also informed C.O. McKnight of this issue and that it was beginning to "reek" in his cell, and C.O. McKnight informed Plaintiff that he would see what he could do about it. A short while later, Plaintiff informed C.O. Wilson of the issue, to which C.O. Wilson responded he would report the issue. At approximately 5:15 p.m., C.O.'s McKnight and Wilson attempted to reset his toilet to get it to flush, but were not successful. Plaintiff then asked C.O. McKnight and C.O. Wilson to move him to one of the five empty cells

3

on the unit. The officers informed him that they would have to ask Sgt. Fletcher before moving him. Later that evening, C.O. McKnight informed Plaintiff that this request had been denied by Sgt. Fletcher. Plaintiff, after holding his bowels the entire day, relieved himself again in the broken toilet.

On May 3, 2014, Plaintiff awoke to a "pungent" odor and decided to limit his intake of food and fluids due to his broken toilet. Plaintiff again asked four separate C.O.'s, McKnight, Bigelow, Eicher, and DiSalva to be moved to another cell, but was not moved. Plaintiff then spoke with Sgt. Fletcher who informed Plaintiff that he would put in a work order for the toilet. The toilet was not fixed, nor was Plaintiff moved from his cell on May 3, 2014.

The next day, on May 4, 2014 as the breakfast trays were distributed, Plaintiff twice informed C.O.'s Ergos and Pellis that his toilet had been broken for four nights, and requested that he be moved to a different cell. C.O Ergos and C.O. Pellis began making jokes about Plaintiff's toilet being broken and the putrid smell emanating from his cell. C.O. Ergos told Plaintiff to "file a grievance like you always do." C.O. Ergos and C.O. Pellis continued to ridicule Plaintiff and shouted insults at Plaintiff while they walked down the cell block. Plaintiff noticed insects crawling and flying out of the vent and around his cell. Plaintiff again spoke with C.O. DiSalva informing him that the toilet had not been fixed and requested to be moved to another cell. C.O. DiSalva again told Plaintiff he would pass along the information to Sgt. Friend. When C.O.'s Ergos and Pellis distributed lunch trays, Plaintiff again informed them of the toilet issue and asked to be moved out of the cell. Plaintiff limited his intake of food and fluids due to his broken toilet again on May 4, 2014. The toilet was not fixed, nor was Plaintiff moved from his cell on May 4, 2014.

The next day, on May 5, 2014, Plaintiff awoke to many more insects roaming his cell and

4

was experiencing severe stomach pain. Plaintiff informed C.O.'s Garland and Dongilli about the issue and requested to be moved to another cell. Plaintiff also informed Sgt. Richter that this was an ongoing issue for the past five days and requested that he be moved. Sgt. Richter refused to move Plaintiff from his cell, but informed Plaintiff that he would contact maintenance about the issue. Plaintiff also informed C.O. Pashka about the plumbing issue. Plaintiff reported experiencing lightheadedness, dizziness, and stomach pains throughout the day.

On May 6, 2014, Plaintiff awoke to more insects in his cell and more hovering outside of his cell. While C.O. Garland was passing out breakfast trays, he made jokes about the odor coming from Plaintiff's cell and made jokes about the insects flying around Plaintiff's cell. While Plaintiff does not indicate whether he was moved, or the plumbing issues were ultimately resolved, he does not complain of any plumbing issues after May 6, 2014.

*3. Failure to Receive Copies of Documents for Grievance Appeal*

On May 5, 2014, Plaintiff sent grievance appeals and attachments to the library to be copied and returned by May 8, 2014, so that the copies could be sent out on May 9, 2014 to the Central Office for final appeal. On May 8, 2014, the library cart containing the library books and copies arrived, but C.O.'s Garland and Haley refused to give Plaintiff his copies on May 8, 2014 and May 9, 2014, despite Plaintiff explaining to them that he had to meet filing deadlines. On May 9, 2014 and May 10, 2014, C.O.'s McKnight and Newman refused to return Plaintiff's copies. On May 10, 2014, Sgt. Fletcher refused to return Plaintiff's copies. That same day, an inmate block worker informed Plaintiff that his copies were on the cart in the hallway, but the C.O.'s were not going to allow Plaintiff to send his grievance to the Central Office for appeal.

On May 17, 2014, Plaintiff was summoned to Lt. Hawkinberry's office, and Lt. Hawkinberry attempted to get Plaintiff to withdraw the grievance regarding his broken toilet

5

(508476) and another grievance (509029). Lt. Hawkinberry told Plaintiff that he would give him a copy of the missing documents if he withdrew his grievances.

Again, on May 23, 2014, Plaintiff was summoned to Lt. Hawkinberry's office and Lt. Hawkinberry informed Plaintiff that he would receive his copies if he withdrew his grievances and if he did not, Lt. Hawkinberry would "make it hard" for Plaintiff. Plaintiff refused to withdraw his grievances and did not receive his copies and missed the deadline to file his grievance appeal to the Central Office for final review.

*4. Failure to Receive Magazine Subscriptions*

Starting on February 14, 2014, Plaintiff did not receive his "Star" magazine and did not receive it for six weeks. Plaintiff wrote to the magazine to confirm delivery to SCI Fayette, and the magazine company confirmed that his issues had been delivered. Plaintiff informed Sgt. Tanner of this issue, and Sgt. Tanner replied that "stuff comes up missing when you file grievances on staff."

## III. STANDARD OF REVIEW

Defendants presently seek dismissal of Plaintiff's Eighth Amendment claims, access to courts claim, and civil conspiracy claim. Defendants do not seek dismissal of Plaintiff's retaliation claim.

*1. Pro se pleadings*

Primarily, a *pro se* pleading is held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106(1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). As such, a *pro se* complaint pursuant to 42 U.S.C. § 1983 must be construed liberally, *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted).

6

Under the Prison Litigation Reform Act ("PLRA"), where a *pro se* prisoner proceeds with his action *in forma pauperis*, the court must dismiss, at the earliest practicable time, any claims that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendants who is immune from such relief. 28 U.S.C. § 1915(e)(2). A complaint is frivolous if it "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The present action is subject to *sua sponte* screening for dismissal under the PLRA, as Plaintiff proceeds as an indigent. *See e.g., Simms v. Freeman*, 428 F. App'x 119, 120 (3d Cir. 2011).

   *2. Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6)*

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. *Twombly*, 550 U.S. at 561 (citations omitted). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555). The factual and legal elements of a claim should be separated, with the court accepting all well-pleaded facts as true and disregarding all legal conclusions. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010). Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)

(internal quotations omitted). A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may take into consideration "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Although a district court may not generally consider matters extraneous to pleadings when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), it may consider documents integral to or explicitly relied upon in a complaint without converting the motion to dismiss into a motion for summary judgment. *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added). Accordingly, the Court may take into consideration Plaintiff's grievances and appeal documents attached to Defendants' motion to dismiss without converting Defendants' motion into one for summary judgment.

## IV. DISCUSSION

*1. 42 U.S.C. § 1983*

Plaintiff brings his constitutional claims pursuant to 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

8

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). In order for a plaintiff to adequately state a claim under Section 1983, he must establish that the defendants deprived him of a right secured by the United States Constitution acting under color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

### 2. Eighth Amendment Cruel and Unusual Punishment Claim

Plaintiff seeks to invoke liability under the Eighth Amendment, which protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).

Notwithstanding, not every injury raises constitutional concerns. A prison official violates the Eighth Amendment only when two requirements are met. The inmate must show that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. *Farmer*, 511 U.S. at 834. The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id.* In determining whether a prisoner

9

has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind. The Supreme Court clarified this deliberate indifference standard in *Farmer* as follows:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation.... But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837–838 (emphasis added).

### a. Deliberate Indifference to Plaintiff's Safety

Plaintiff first alleges that the prison officials were deliberately indifferent to his safety when they forced him out on yard during a cold winter day and he fell on a patch of ice and injured his knee and back. These allegations do not give rise to a substantial risk of serious harm or challenge the common standards of decency, nor do these allegations demonstrate deliberate indifference for purposes of asserting an Eighth Amendment violation. *See Clayton v. Morgan*, No. CIV.A. 11-623, 2012 WL 1448332, at *3 (W.D. Pa. Feb. 16, 2012), *report and*

*recommendation adopted*, No. CIV.A. 11-623, 2012 WL 1454889 (W.D. Pa. Apr. 26, 2012) (collecting cases), *aff'd*, 501 F. App'x 174 (3d Cir. 2012) (forcing plaintiff-inmate into the yard with icy conditions did not state a claim under the Eighth Amendment and sounded in negligence). Plaintiff's allegations sound in negligence, which is not actionable under section 1983. *See Davidson v. Cannon*, 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (a lack of due care by prison officials does not state a claim under either the substantive or the procedural aspects of the Due Process Clause). "A 'slip and fall,' without more, does not amount to cruel and unusual punishment. . . . Remedy for this type of injury, if any, must be sought in state court under traditional tort law principles." *Clayton*, 2012 WL 1448323, at *3 (quoting *Mitchell v. West Virginia*, 554 F.Supp. 1215, 1217 (N.D.W.Va.1983). *See also Brinkley v. Smeal*, No. 1:CV-10-00224, 2010 WL 5391276, at *5 (M.D. Pa. Dec. 22, 2010) (dismissing plaintiff-inmate's Eighth Amendment claim with prejudice as "slipping and falling on ice fails to state an Eighth Amendment claim.").

Accordingly, Plaintiff's Eighth Amendment claim insofar as he alleges that the Defendants were deliberately indifferent to his safety by subjecting him to an icy yard where he slipped and fell is dismissed with prejudice, as it would be futile to allow him to amend his complaint.

### b. *Conditions of Confinement*

Next, Plaintiff alleges that the Defendants violated the Eighth Amendment by ignoring the plumbing issues with his toilet that Plaintiff reported to numerous prison officials and subjecting him to an unsanitary environment for five days by not moving him to a different cell when his toilet would not flush, was full of excrement and insects starting accumulating in his cell because of the foul odor. Plaintiff also alleges that he limited his intake fluids or food during

11

this time, experienced stomach pain and lightheadedness, and did not have adequate access to a bathroom for this period of time.

Under the Eighth Amendment, prison officials must provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter and medical care, and "take reasonable measure to guarantee the safety of the inmates." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981); *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). The inmate must allege that he had suffered an objectively sufficiently serious injury and prison officials were deliberately indifferent in inflicting this injury. *Tillman*, 221 F.3d at 418. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, . . . only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992) (internal quotations and citations omitted). A prison's condition will violate the Eighth Amendment where, considering the "totality of the conditions within the institution[,]" either alone or in combination with other conditions of confinement, "deprive inmates of the minimal civilized measure of life's necessities." *Tillery v. Owens*, 907 F.2d 418, 426 (3d Cir. 1990) (citations omitted). Generally, the denial of access to a lavatory has been found to violate the Eighth Amendment "where it is unconscionably long or where it constitutes an ongoing feature of an inmate's confinement." *Cook v. Wetzel*, No. CIV.A. 13-6575, 2015 WL 2395390, at *5 (E.D. Pa. May 20, 2015). The lack of access to restroom facilities violates the Eighth Amendment where it compromises the psychological or physical health of the inmate. *Young v. Quinlan*, 960 F.2d 351, 365 (3d Cir. 1992).

Here, we find that Plaintiff has stated an Eighth Amendment claim for Defendants' failure to provide him with adequate access to a working toilet for five days and subjecting him to unsanitary living conditions for that period of time by forcing him to remain in a cell with raw sewage and swarming insects after Plaintiff repeatedly reported the problem to countless prison officials over the five days, asked to be moved to one of the five empty cells on the unit and submitted multiple unanswered grievances on the matter. What is more, Plaintiff was forced to endure these conditions for 23 hours a day, as he was confined to his cell in the RHU, and alleges that he limited his intake of food and water for five days to prevent himself from having to use the toilet. Such a practice is a danger to Plaintiff's health, dignity and hygiene. Plaintiff's allegations are in line with other cases that have found the denial of the access to restroom facilities and unsanitary living conditions violated the Eighth Amendment. *See Hope v. Pelzer*, 536 U.S. 730, 734, 122 S. Ct. 2508, 2512, 153 L. Ed. 2d 666 (2002) (inmate was handcuffed to hitching post and forced to stand shirtless in the sun for seven hours while deprived of any water or restroom facilities demonstrated an Eighth Amendment violation); *Young*, 960 F.2d at 365 (inmate placed in "dry" cell with no toilet or wash basin, permitted only one bathroom break in four days, forced to relieve himself in the corner of his cell, given no toilet paper despite suffering from diarrhea, was not permitted to wash his hands before eating and denied water and told to drink his own urine); *Tillery*, 907 F.2d at 426 (inadequate plumbing violates the Constitution); *Palmer v. Johnson*, 193 F.3d 346, 352-54 (5th Cir. 1999) (inmate required to sleep outside for seventeen hours with forty-eight other inmates and forced to openly urinate and defecate in an area measuring twenty feet by thirty feet stated an Eighth Amendment claim); *Carver v. Knox Cty., Tenn.*, 753 F. Supp. 1370, 1389 (E.D. Tenn.), *aff'd in part, rev'd in part on other grounds*, 887 F.2d 1287 (6th Cir. 1989) ("functioning sinks, toilets and showers are basic

necessities of modern life, particularly within the confines of a wholly self-contained environment such as a jail.").

Accordingly, Plaintiff has stated an Eighth Amendment claim for the conditions of his confinement and Defendants' motion to dismiss is denied.

### 3. Denial of Access to Courts Claim

While unclear from the complaint, it seems that Plaintiff's denial of access to courts claim stems from certain corrections officers failing to return copies of his grievances so he could timely appeal to Central Office for final appeal. Thus, it appears he alleges that he was denied access to the prison grievance system, and not to this Court.

While prisoners have a constitutional right of access to courts under the First and Fourteenth Amendments of the United States Constitution, *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir.2008), it is well-established that inmates do not have a constitutionally protected right to a prison grievance system. *Freeman v. Dep't of Corr.*, 447 F. App'x 385, 387 (3d Cir.2011). Therefore, even if Defendants "denied Plaintiff the grievance process or obstructed the grievance procedure, [that,] by itself, simply does not give rise to a cognizable independent claim." *Rieco v. Scire*, No. 2:13-CV-1360, 2014 WL 5343221, at *4 (W.D. Pa. Oct. 20, 2014) (citing *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir.2007); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir.2001) (collecting cases); *Allen v. Warden of Dauphin Cnty. Jail*, No. 07–1720, 2008 WL 4452662, at *5 (M.D.Pa. Sept. 29, 2008) (holding a prison official's refusal to provide grievance forms or respond to an inmate's complaint does not constitute a violation of due process)).

Accordingly, because Plaintiff cannot state a constitutional violation for the Defendants allegedly withholding copies of grievances and attachments to send for final appeal, his denial of

14

access to courts claim is dismissed with prejudice, as amendment would be futile.

   *4. Civil Conspiracy Claim*

To demonstrate the existence of a conspiracy under Section 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Laurensau v. Romarowics*, 528 F. App'x 136 (3d Cir.2013) (internal citations omitted). "A bare assertion of conspiracy will not suffice." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir.2000) (quoting *Twombly*, 550 U.S. at 556). Rather, the plaintiff must allege facts from which one can reasonably infer that the defendants reached an agreement to deprive him of a constitutional right under color of law. *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir.1993), *overruled on other grounds, U.A. Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir.2003).

At this point, Plaintiff has adequately stated a conspiracy claim for his Eighth Amendment conditions of confinement claim and his First Amendment retaliation claim. He alleges that many corrections officers and prison officials agreed to do nothing about his broken toilet and unsanitary cell condition and indeed told him that he would not be moved from his cell and joked about the unsanitary conditions they subjected him to. Further, Plaintiff adequately alleges that several corrections officers and prison officials retaliated against him for filing a grievance for his slip and fall by subjecting him to the unsanitary conditions in his cell, and not giving him his copies of grievances or his magazines, and not allowing him to go outside after complaining about such conditions.

Accordingly, Defendants' motion to dismiss Plaintiff's conspiracy claim is denied.

   *5. Remaining Claims*

It is worth mentioning that Plaintiff includes a "failure to protect" claim that will be

construed as a negligence claim. Defendants do not move to dismiss this claim. Plaintiff levies this claim against Defendants for their conduct in forcing him to go out for yard in sub-zero temperatures and in failing to clear the yard of ice, and causing him to slip and fall and injure his knee and back.

Because the present action is subject to *sua sponte* screening for dismissal under the PLRA, the Court will consider whether Plaintiff has stated a negligence claim.

To state a claim for negligence under Pennsylvania law, the plaintiff must allege the standard elements of a negligence claim – duty, breach, causation and damages. *See e.g., Althaus ex rel. Althaus v. Cohen*, 562 Pa. 547, 552, 756 A.2d 1166, 1168 (2000). To the extent that Plaintiff alleges that Defendants are negligent for forcing him and other inmates to go outside in sub-zero temperatures, he has not alleged that he suffered any injury, such as frostbite or the like, and as such, this claim is dismissed with prejudice. However, as to Plaintiff's claim that Defendants failed to keep the yard clear of ice, which caused him to slip, fall and injure his knee and back, he has adequately stated a claim.

Lastly, Plaintiff includes a separate cause of action entitled "supervisory liability," but because this is not a legal claim, but rather a theory of liability, the Court will not address whether Plaintiff has stated such a claim.

## V. CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is granted in part and denied in part. Defendants' motion is granted with respect to Plaintiff's Eighth Amendment deliberate indifference claim and this claim is dismissed with prejudice; Defendants' motion is granted as to Plaintiff's Denial of Access to Courts claim and this claim is dismissed with prejudice; Plaintiff's negligence claim as to Defendants forcing him to the yard in inclement weather is

dismissed with prejudice; Defendants' motion is denied as to Plaintiff's Eighth Amendment conditions of confinement claim; and Defendants' motion is denied as to Plaintiff's civil conspiracy claim.

An appropriate Order follows.

Dated: June 2, 2016.

By the Court,<br>
s/ Cynthia Reed Eddy<br>
Cynthia Reed Eddy<br>
United States Magistrate Judge

cc:  AILEAF ASHFORD
DZ-2871
SCI Forest
PO Box 945
Marienville, PA 16239

*Attorney for Defendants*
Yana L. Warshafsky
via CM/ECF electronic filing